■ BESICORP GROUP, INC., Appellant, v MARTIN ENOWITZ, Respondent. [652 NYS2d 366] —Spain, J. Appeals (1) from an order of the Supreme Court (Carpinello, J.), entered November 17, 1995 in Ulster County, which granted defendant's motion for summary judgment dismissing the complaint, and (2) from an order of said court, entered April 25, 1996 in Ulster County, which granted defendant's motion for summary judgment on his second counterclaim.

Defendant was an officer and director of plaintiff. In 1992, at the time defendant was hired on a full-time basis, he suffered from a condition known as Charcot-Marie-Tooth disease (hereinafter CMT), which is a progressive neurological-degenerative disease; plaintiff was fully aware of defendant's disability and made certain accommodations for him. At the beginning of defendant's full-time employment, the parties executed a stock agreement (hereinafter the agreement) wherein defendant was granted a restricted stock award of 100,000 shares of plaintiff's common stock subject to certain terms and conditions. The intent of the agreement was to provide an incentive to "officers of [plaintiff] who are largely responsible for the management, growth and protection of [plaintiff's] business, to continue to provide services to [plaintiff]". The agreement provided for a three-part vesting schedule, based on longevity over a five year period, of the 100,000 shares to be awarded and included a forfeiture clause in the event defendant's employment with plaintiff should terminate prior to vesting for "any reason other than * * * death or permanent disability". The forfeiture clause specifically states, in pertinent part, as follows: "During the applicable Restriction Period set forth in Section 4 below, in the event that [defendant's] employment with [plaintiff] terminates for any reason other than [defendant's] death or permanent disability (as defined in Section 22 (e) (3) of the United States Internal Revenue Code * * *), including but not limited to termination voluntarily, whether upon retirement or otherwise, or involuntarily, whether or not for cause, [plaintiff] shall have the right, exercisable in its sole discretion at any time up to and including the thirtieth (30th) day after such termination, to purchase from [defendant] all of the Award Shares".

In April 1994 plaintiff's president, after expressing to defendant his concerns about defendant's ability to effectively perform his duties, modified defendant's job description and reduced his salary. Thereafter, in early August 1994, defendant was informed that his duties would be further modified and that his job site would be changed from Kingston to Ellenville.

In a letter dated August 17, 1994, defendant tendered his resignation claiming that he was permanently disabled "in accordance with Section 22 (e) (3) of the Internal Revenue Code" and could no longer render services to plaintiff due to his physical condition. In his letter, defendant specifically cited the terms of the agreement and stated that his vesting would continue, as he had resigned due to a permanent disability. By letter dated October 20, 1994 plaintiff's president responded to defendant, stating that his resignation was not complete as defendant had not resigned from his duties at plaintiff's subsidiaries; plaintiff also reserved the right to exercise its buy-back rights in the event that defendant's disability claim was not proven. In response, defendant took the position that plaintiff did not have buy-back rights as defendant's stated reason for resigning was permanent disability.

Plaintiff commenced the instant action against defendant claiming that defendant had no right to the stock under the agreement and seeking, *inter alia*, a declaratory judgment that defendant was not permanently disabled and that the stock had not vested in defendant. Plaintiff also sought a declaratory judgment compelling defendant to sell plaintiff the stock granted in accordance with the agreement at the price established for repurchase. Defendant answered and counterclaimed, demanding, *inter alia*, a declaratory judgment that defendant was, at the time of his resignation and is currently, permanently disabled and that the stock has vested in defendant giving him unrestricted ownership rights. Thereafter, defendant moved for summary judgment dismissing plaintiff's complaint; Supreme Court granted the motion and also dismissed plaintiff's affirmative defense of equitable estoppel which was raised in its answer to defendant's counterclaims. Defendant then moved to compel delivery of the shares of stock without the restrictions set forth in the agreement. During oral argument on the motion, Supreme Court converted the motion to compel to a motion for summary judgment on defendant's counterclaims. Supreme Court granted defendant's motion for summary judgment on the second counterclaim seeking delivery of the shares but denied summary judgment on the first counterclaim, which sought a declaration that de-

fendant was permanently disabled. Plaintiff now appeals both orders.

In our view, the forfeiture clause contained in the agreement between plaintiff and defendant can be interpreted in two ways. It can be read to mean, as Supreme Court and defendant assert, that in order to exercise its buy-back option plaintiff had to notify defendant of its intent within 30 days, regardless of the reason for defendant's resignation; or it may be read to mean, as plaintiff asserts, that if defendant offers permanent disability as the reason for his resignation, the buy-back option is not applicable and plaintiff need not timely notify defendant of its intent to repurchase his shares.

When determining a motion for summary judgment based upon a written contract, "the construction of an unambiguous contract is for the court to pass on, and circumstances extrinsic to the agreement or varying interpretations of the contract provisions will not be considered when the intention of the parties can be gathered from the instrument itself" (*Yanuck v Paston & Sons Agency*, 209 AD2d 207, 208). However, "where, as here, interpretation of contract terms or provisions is susceptible to at least two reasonable interpretations, and intent must be gleaned from disputed evidence or from inferences outside the written words, it becomes an issue of fact that must be resolved by trial" (*supra*, at 208). Moreover, "[w]here there is doubt as to the existence of a triable issue or where the issue is arguable, summary judgment should not be granted" (*Slomin v Skaarland Constr. Corp.*, 207 AD2d 639, 641).

We conclude that the conflicting interpretations of the respective parties are each reasonable and that a triable issue of fact exists. Accordingly, it was inappropriate for Supreme Court to decide, as a matter of law, that the 30-day time period applied to plaintiff's repurchase option and erred in granting summary judgment dismissing the complaint in favor of defendant. In light of the foregoing, we also conclude that Supreme Court erred in granting defendant's motion for summary judgment on his second counterclaim, which sought delivery of the shares.

We also find meritorious plaintiff's contention that Supreme Court erred in granting summary judgment dismissing plaintiff's affirmative defense of equitable estoppel. Plaintiff asserts, as an affirmative defense to defendant's counterclaims, that defendant is equitably estopped from raising the 30-day notice period for plaintiff's buy-back rights because of the stated reason for his resignation, permanent disability. Under

the terms of the forfeiture clause, permanent disability was not one of the reasons for termination which triggered the repurchase option. Supreme Court held that defendant should not be estopped from arguing that the 30-day period expired, agreeing with defendant that there was no showing of detrimental good faith reliance. Equitable estoppel is defined as "[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had" (Black's Law Dictionary 538 [6th ed 1990]). Under this theory, a party is "precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct" (Black's Law Dictionary 538 [6th ed 1990]). Applying this definition to this case, it is clear that an issue of fact exists as to whether plaintiff relied on defendant's claim of permanent disability and did not assert its buy-back right as a result of defendant's assertion in his resignation letter. Plaintiff should at least be given an opportunity to prove that defendant's conduct "induced [its] significant and substantial reliance" and, if proven, the doctrine of equitable estoppel should be applied to this case (*European Am. Bank v Mr. Wemmick,* 160 AD2d 905, 907). Because the issues of reliance and estoppel (*see, Van Nostrand v Town of Denning,* 132 AD2d 93) are ones of fact, it was improper for Supreme Court to grant summary judgment in favor of defendant on the issue of plaintiff's affirmative defense of equitable estoppel.

Mikoll, J. P., Yesawich Jr. and Peters, JJ., concur. Ordered that the orders are reversed, on the law, without costs, and motions denied.