■ STEPHEN VINCIGUERRA et al., Appellants, v STATE OF NEW YORK, Respondent. [693 NYS2d 634] —Peters, J. Appeal from a judgment of the Court of Claims (McNamara, J.), entered January 30, 1998, upon a decision of the court in favor of the State.

Claimants purchased eight parcels of vacant, undeveloped land in a series of five transactions beginning in January 1973 and ending in November 1990. A concrete head wall and culvert, part of a drainage system for a nearby roadway, encroached approximately 2 to 2½ feet onto claimants' land and directed water across it. Claimants contend that it was not until 1989 that they discovered such intrusion during grading and filling of the property in anticipation of their construction of a strip mall. Ultimately, claimants learned that the State had constructed the head wall and culvert as part of a project which was completed in 1948.

It is uncontested that a separate, visible stream flowed across the land and accumulated in an area in close proximity to the head wall and culvert, thereby covering them when the stream was flowing—purportedly the reason that claimants never noticed them. It is further undisputed that while claimants never surveyed the lots prior to their purchase, they were aware of the ditch that carried the stream of water and admit that the stream ran intermittently and was dry at the time of their purchase.

Upon discovery of the encroachment, claimants requested the State to redirect the waters. The State declined to do so, contending that the drainage system had been in uninterrupted use since approximately 1908, thereby giving it a prescriptive drainage easement burdening the property. Claimants filed their notice of intention to file a claim in May 1991 and commenced this action seeking damages for trespass, de facto appropriation and prima facie tort. The State moved for summary judgment, which resulted in the dismissal of the claim for prima facie tort. At the conclusion of a trial, the Court of Claims found that the State's action constituted a de facto appropriation, as opposed to a trespass, for which the Statute of Limitations had long expired. As a result, the court dismissed this action and claimants now appeal.

Our review in matters of this kind "is not limited to whether

the verdict is against the weight of the evidence" (*Lewis v State of New York*, 223 AD2d 800, 801). Instead, "we may factually assess whether the Court of Claims granted a judgment warranted by the evidence * * * [and] [i]n so doing, we must give due deference to the decision of the trial court, which was in a better position to assess the evidence and the credibility of the witnesses" (*id.*, at 801 [citations omitted]). In applying this standard upon our review of the record, we conclude that the State's action did not constitute a de facto appropriation.

To constitute a de facto appropriation, it must be shown "that the government has intruded onto the citizen's property and interfered with the owner's property rights to such a degree that the conduct amounts to a constitutional taking requiring the government to purchase the property from the owner; only at that point does title actually transfer" (*O'Brien v City of Syracuse*, 54 NY2d 353, 357). Although similar to a trespass since it requires the same proof, "[t]he basic distinction lies in the egregiousness of the trespass and whether it is of such intensity as to amount to a taking" (*id.*, at 357; *see, Stewart v State of New York*, 248 AD2d 761; *Sassone v Town of Queensbury*, 157 AD2d 891). Hence, " '[w]here the interference with property rights is only temporary, casual, or intermittent, without any permanent use or appropriation or destruction of an existing right, there is a mere trespass and not a taking' " (*Stewart v State of New York, supra*, at 762, quoting 51 NY Jur 2d, Eminent Domain, § 88, at 135).

Giving due deference to the determination rendered, we find that, despite the existence of these permanent physical structures which impinged 2½ feet onto claimants' property from at least 1948 and acted as a conduit for intermittent surface water runoff from a State highway, both the permanent structures and their resultant runoff, at most, hampered and complicated claimants' development plans. As such, we do not find that there was sufficient evidence presented to have constituted " 'a physical entry by the condemnor, a physical ouster of the owner, a legal interference with the physical use, possession or enjoyment of the property or a legal interference with the owner's power of disposition of the property' " (*Borntrager v County of Delaware*, 76 AD2d 969, 970, quoting *City of Buffalo v Clement Co.*, 28 NY2d 241, 255), so egregious as to constitute a constitutional taking. In contradistinction to the State's position, we find the redirection of surface water depriving a litigant of access to approximately 35 acres and destroying its value as a trout stream as in *Borntrager v County of Delaware* (*supra*), the appropriation of land used in

conjunction with an adjacent landfill by fencing in the area, installing a trash compactor, a toll gate, and erecting signs indicating that the property was a town landfill as in *Sassone v Town of Queensbury (supra)* or the placement of a drainage ditch occupying approximately 2.46 acres of claimants' land as in *Hylan Flying Serv. v State of New York* (54 AD2d 278, *lv dismissed* 40 NY2d 809) to be distinguishable.

We must next assess whether the intrusion amounted to a continuing trespass giving rise to successive causes of action, barred only by the expiration of sufficient time to create an easement by prescription (*see, 509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48, 52; *see also, Carr v Town of Fleming*, 122 AD2d 540). To establish a prescriptive easement, it must be demonstrated by clear and convincing evidence that the use of the subject property was adverse, open and notorious, and continuous and uninterrupted for the prescribed period* (*see, Posnick v Herd*, 241 AD2d 783; *Led Duke v Sommer*, 205 AD2d 1009; *Charlebois v Lobe-A Prop. Owners*, 193 AD2d 916). Upon our review, we find the standard met (*see, Torre v Meade*, 226 AD2d 447, *lv denied* 88 NY2d 813).

It is clear that the discharge of water and the construction of the head wall and culvert were adverse to the interests of claimants and both continuous and uninterrupted, although not constant (*see, Miller v Rau*, 193 AD2d 868, 869), for the prescriptive period. Hence, the only remaining issue is whether the State's use was open and notorious. Undisputed testimony reveals that at certain times, including the time when claimants purchased the relevant portion of the property, the nearby stream was dry, thereby making the head wall and culvert visible upon inspection. Notwithstanding claimants' mistaken belief as to the source of the water, testimony further revealed that when the water was running, the ditch in front of the subject lots was inundated with water and there existed a catch basin thereat which was openly visible. These facts, coupled with claimants' admission that they never thoroughly inspected the ditch and did not have the property surveyed before their purchase, supports the open and notorious nature of the State's infringement. Concluding that this knowledge must be imputed to claimants (*see, Carr v Town of Fleming, supra*) and that they failed to show, at any juncture, that the use thereof was permissive (*see, Led Duke v Sommer, supra*, at 1010), we find that the State has established a prescriptive easement for drainage across the property and, therefore, claimants have no cause of action for a continuing trespass.

---

* The prescriptive period is 10 years (*see,* CPLR 212 [a]; RPAPL 501).

Accordingly, while our factual and legal analysis differs from that of the Court of Claims, we nevertheless affirm the judgment dismissing the claim.

Cardona, P. J., Spain, Carpinello and Graffeo, JJ., concur.
Ordered that the judgment is affirmed, without costs.